## DOMINION TRUST COMPANY, ET AL.

### V.

## KENBRIDGE CONSTRUCTION COMPANY, INC.

Record No. 931073

September 16, 1994

Present: Carrico, C.J., Compton, Stephenson, Whiting, Hassell, and Keenan, JJ.,
and Poff, Senior Justice

*Denis C. Englisby (Englisby & Englisby*, on brief), for appellants.

*R. Webb Moore (Barry A. Hackney; Ian J. Wilson; Hirschler, Fleischer, Weinberg, Cox & Allen*, on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

In this appeal, we consider whether a mechanic's lien was perfected in the manner prescribed by law.

## I.

Plaza One Associates, a Virginia Limited Partnership, executed a contract with Kenbridge Construction Company, Inc. for the construction of a hotel upon approximately five acres of property. Plaza One failed to pay for certain work, and Kenbridge filed a memorandum for mechanic's lien in the principal amount of

$316,603.88, later reduced to $315,048.88 to correct a clerical error.

Kenbridge filed its amended bill of complaint to enforce its mechanic's lien against numerous defendants, including Dominion Trust Company and Riggs National Bank of Washington, D.C., the trustee and beneficiary, respectively, of a deed of trust upon the property. The cause was referred to a commissioner in chancery. Dominion and Riggs asserted (1) that the memorandum for mechanic's lien was not filed timely and (2) that the memorandum is invalid because it includes the costs of labor performed and materials used on public roads which are neither located on the property nor described in the memorandum. The commissioner and the trial court rejected both defenses, and the trial judge entered a judgment in favor of Kenbridge. We awarded an appeal to Dominion and Riggs.

## II.

As the commissioner found, the project architect certified that the hotel was "substantially complete" on May 5, 1989, and the hotel opened for business that day. As of that date, however, Kenbridge was required to perform other work to fulfill its obligations under the construction contract. Kenbridge was required by the contract to complete work on a swimming pool enclosure, the hotel's "Presidential Suite," the employee locker room, the men's lockers, and the landscape. This work was not correction of previous work or warranty repairs. Kenbridge would have been in breach of its contract if it had failed to perform this work.

■ Code § 43-4, states in relevant part:

> A general contractor, or any other lien claimant . . . in order to perfect the lien given by § 43-3, . . . shall file a memorandum of lien at any time after the work is commenced or material furnished, but not later than ninety days from the last day of the month in which he last performs labor or furnishes material, and in no event later than ninety days from the time such building, structure, or railroad is *completed*.

(Emphasis added.) Dominion and Riggs argue that the memorandum for mechanic's lien was not filed timely because the memorandum was filed more than 90 days from the date that the hotel

was substantially completed. Dominion and Riggs, relying upon cases from other states, argue that the word "completed," contained in Code § 43-4, "must be interpreted to mean the date of substantial completion of the building" and that insignificant work performed after the date of substantial completion "will not extend the time for filing a memorandum of lien." Kenbridge, however, asserts that its memorandum for mechanic's lien is timely because it was filed within 90 days of the date of completion. We agree with Kenbridge.

We have repeatedly articulated principles of statutory construction that we must apply when a statute, such as Code § 43-4, is clear and unambiguous.

> While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed.

*Barr* v. *Town & Country Properties, Inc.*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting *Watkins* v. *Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)). Applying this rule of statutory construction, we decline the invitation of Dominion and Riggs to rewrite and change the plain meaning of Code § 43-4 by adding the word "substantially" as a modifier to "completed."

█ Accordingly, we hold that in the absence of evidence that a contractor acted in bad faith to delay the completion of work on a project, the contractor is required to file his memorandum for mechanic's lien 90 days from the date of completion. *See* Burks' Pleading and Practice § 459 (4th ed. 1952). Here, there is no evidence that Kenbridge delayed the completion of its work in bad faith to extend the time of filing its memorandum. Kenbridge's work logs reveal that it completed work on the project on June 8, 1989 and, therefore, its memorandum for mechanic's lien, filed August 21, 1989, was within the prescribed 90 day statutory period.

## III.

### A.

█ Dominion and Riggs argue that the lien is invalid because the memorandum for mechanic's lien includes the cost of labor and materials that Kenbridge furnished on the roads that are not part of the property. Kenbridge asserts that the roads are part of the property. We disagree with Kenbridge. The commissioner found that the labor and materials furnished on the roads constituted "off-site work," and Kenbridge did not assign cross-error to the trial court's order confirming the commissioner's report.

Kenbridge contends, however, that when it began to construct the hotel Kenbridge believed that the roads had been vacated by the County, and when public roads are vacated, the fee simple interest in the roads vests in the party who owns the adjacent real estate. *See* Code § 15.1-483. Our review of the record reveals, however, that Kenbridge failed to prove either that the roads had been vacated or that the roads were adjacent to and had become a part of the property upon which the hotel was constructed.

█ Kenbridge also argues that even if the roads are not part of the property, they are permanently annexed to the freehold pursuant to Code § 43-2 and, thus, the value of work performed on the roads may be included in its mechanic's lien memorandum. We disagree with Kenbridge because Code § 43-2 does not apply.

█ Code § 43-2 states:

> For the purpose of this chapter, a well, excavation, sidewalk, driveway, pavement, parking lot, retaining wall, curb and/or gutter, breakwater (either salt or fresh water), water system, drainage structure, filtering system (including septic or waste disposal systems) or swimming pool shall be deemed a structure permanently annexed to the freehold, and all shrubbery, earth, sod, sand, gravel, brick, stone, tile, pipe or other materials, together with the reasonable rental or use value of equipment and any surveying, grading, clearing or earth moving required for the improvement of the grounds upon which such building or structure is situated shall be deemed to be materials furnished for the improvement of such building or structure and permanently annexed to the freehold.

In *Rosser* v. *Cole*, 237 Va. 572, 379 S.E.2d 323 (1989), we discussed the purpose of Code § 43-2 and its relation to Code § 43-3(A).* We observed that Code § 43-3(A) permits a mechanic to perfect a lien upon the structure he had built and so much land as the enforcing court of equity might apportion to it for "the convenient use and enjoyment thereof," but the mechanic would not have a lien on other buildings upon which no work had been performed or upon the residue of the land itself. We noted that historically there were many kinds of construction work unprotected by any lien rights, such as clearing, excavation, and grading, because the work did not contribute to any "building or structure permanently annexed to the freehold." *Rosser*, 237 Va. at 576-77, 379 S.E.2d at 326.

■ Beginning in 1922, the General Assembly enacted a series of laws that extended lien rights to those who had furnished labor and materials as described in Code § 43-2. Only those items specifically enumerated in Code § 43-2 are "deemed a structure permanently annexed to the freehold" and, therefore, are subject to lien rights. *Rosser*, 237 Va. at 577, 379 S.E.2d at 326. In *Rosser*, we specifically held that because subdivision streets are not enumerated in Code § 43-2, such streets are not permanently annexed to the freehold. *Id.* Likewise, we hold that the roads upon which Kenbridge performed its work cannot be deemed permanently annexed to the freehold under Code § 43-2 because roads are not specifically enumerated in this statute.

### B.

■ Kenbridge contends that Riggs and Dominion stipulated at trial that all work included in the mechanic's lien memorandum, including labor and material furnished on the roads, had been performed on the property described in the memorandum. We disagree with Kenbridge. Our review of this stipulation reveals Riggs and Dominion only agreed that Kenbridge furnished labor and

---

* Code § 43-3(A) states in relevant part:

All persons performing labor or furnishing materials of the value of fifty dollars or more, for the construction, removal, repair or improvement of any building or structure permanently annexed to the freehold, and all persons performing any labor or furnishing materials of like value for the construction of any railroad, shall have a lien, if perfected as hereinafter provided, upon such building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment thereof.

materials in an amount equal to or greater than $316,603.88 and that Kenbridge has not been paid for such labor and materials.

## IV.

Kenbridge argues that "[e]ven if the work was not performed on a single parcel, and such work is not subject to the protection of [Code] § 43-2, the evidence established that Kenbridge was paid for all . . . the alleged off-site work except for $10,842.30, and thus [this] Court should . . . issue final judgment in favor of Kenbridge in the amount of $304,206.58." Relying upon *West Alexandria Properties* v. *First Virginia Mortgage and Real Estate Investment Trust*, 221 Va. 134, 141-42, 267 S.E.2d 149, 153-54 (1980), and *The First National Bank of Martinsville* v. *Roy N. Ford Company*, 219 Va. 942, 945, 252 S.E.2d 354, 356 (1979), Kenbridge argues that in the event this Court decides that the memorandum for mechanic's lien includes work performed on the roads and the roads are not part of the property, then this Court should simply reduce the lien by deducting the amount attributable to the work performed off-site.

We disagree. It is true that in *West Alexandria Properties* and *Bank of Martinsville*, we have held that a trial court, in certain limited circumstances, may reduce the amount of a mechanic's lien rather than invalidate the lien. Here, however, we are of opinion that Kenbridge is not entitled to such relief.

Even though Kenbridge had the opportunity to request that the trial court reduce the lien to reflect only the value of labor and materials performed on the property, Kenbridge failed to do so. Indeed, the evidence of record reveals that Kenbridge probably could not have done so. Douglas B. Sauer, Kenbridge's vice president and project manager, testified that he was "not sure" if the amount of Kenbridge's mechanic's lien included work performed "off-site." Sauer also testified as follows:

[Question]: With regard to your testimony that a portion of the work was done inside the original 5-acre plat with regard to this realignment of Eubank Road, it's not possible for you to assign a particular dollar value to the work done inside the property line versus any that was done outside, is it?

[Answer]: Not at this time. It would take some time to develop the cost.

Certainly, this Court, in its appellate capacity, cannot be expected to ascertain the amount of Kenbridge's lien when Kenbridge was unable to produce such testimony during the proceedings below.

## V.

In view of the foregoing rulings, we need not discuss the remaining issues raised in this appeal. Accordingly, we will reverse the judgment of the trial court, and we will dismiss the suit to enforce the mechanic's lien.

*Reversed and dismissed.*